The document below is hereby signed.

Signed: March 18, 2020



*S. Martin Teel, Jr.*
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ANGELO A. HORTON, | ) | Case No. 20-00033 |
| | ) | (Chapter 13) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION REGARDING
<u>DISMISSING CASE WITH PREJUDICE FOR 180 DAYS</u>

The debtor, Angelo A. Horton, has filed a response to the court's order dated March 6, 2020, and entered on March 9, 2020, directing him to show cause why the case ought not be dismissed with prejudice for 180 days. The response fails to demonstrate that this case ought not be dismissed with prejudice for 180 days.

The court's order to show cause first noted Horton's failure as of March 6, 2020, to file a Chapter 13 plan. Horton commenced this case on January 27, 2020. In an order of January 28, 2020, the court ordered that unless Horton obtained an extension of time, he must file his Chapter 13 plan by February 10, 2020. As of March 18, 2020, fifty-one days after the commencement of the case, Horton has not filed a proposed Chapter 13 plan, and he

never sought an extension of time to do so.  Under 11 U.S.C. § 1326(a) he was required to commence making plan payments by February 26, 2020.  Horton similarly commenced an earlier case, Case No. 18-00636, on September 25, 2018, as a Chapter 13 case and converted that case to Chapter 7 on November 7, 2019, forty-three days later, without ever having filed a Chapter 13 plan.  The failure to file a plan and to commence plan payments in this current case is evidence of bad faith.  In his response of March 18, 2020, to the order to show cause, Horton responds, regarding his failure to file a plan, that:

> The reason I have not filed my Chapter 13 Plan and started making payments is due to accident and mistake and not conscious indifference or inexcusable neglect. In this regard, I ask the Court to take judicial notice of its docket sheet where it will see how busy I have been getting my schedules and other documents filed and then corrected as well as responding to the Motion to Lift Stay.  In the process of those things I lost track of filing my Chapter 13 Plan which I will file on or before March 20, 2020.

Horton's failure to file a Chapter 13 plan is not excusable neglect.  Horton's meeting of creditors under 11 U.S.C. § 341, at which he was required to appear, was scheduled for March 16, 2020.  Obviously he needed to have filed a Chapter 13 plan beforehand, revealing proposed payments to the Chapter 13 trustee, in order for the Chapter 13 trustee and creditors to examine him at the meeting of creditors regarding the feasibility of the plan.  Moreover, in his prior case, the Chapter 13 trustee filed a motion to dismiss the case based on, among other things,

Horton's failure to file a plan.  Horton's failure to file a Chapter 13 Plan is not excusable, and that is cause to dismiss the case even if I were to find that this inexcusable neglect was not intentional.

   As the court's order to show cause noted:

> [T]he debtor received a discharge in Case No. 18-00636. Accordingly, pursuant to 11 U.S.C. § 1328(f)(1) he will not be entitled to a discharge in this case.  The debtor scheduled debts of only $1,764 (for insurance and utility bills incurred in December 2019 and January 2020), and his Schedules I and J indicate that he has monthly net income of $1,355, which suggests that he could have readily paid these bills as they came due in the two months of December 2019 and January 2020.  It is doubtful that the debtor, viewing himself as having only $1,764 in debts, perceived himself as being in need of filing a Chapter 13 case.  If he had timely filed a plan, committing to pay his monthly net income to the trustee, and had timely commenced plan payments on February 26, 2020, his first plan payment of $1,355.00 would have almost equaled the $1,764 in scheduled debts.

Horton's response does not dispute the foregoing.  He has not shown that he needed to file this bankruptcy case in order to address existing debts.  The only possible reason he needed to file the bankruptcy case was to obtain an automatic stay of a pending proceeding to evict him from a property, Horton's home (the "Property), that had been sold at foreclosure.

   The court's order to show cause stated:

> The debtor admits, in responding to a motion for relief from the automatic stay, that his home was foreclosed upon on February 28, 2019. It appears that he has not yet been evicted.  The debtor's failure to file a plan suggests that he has filed this case in bad faith only to obtain the benefit of the automatic stay of any eviction proceeding.

3

Horton's response states:

> I admit that I filed my bankruptcy in part to stop my eviction but that is not bad faith - it is an act of desperation. I am locked in a legal battle with Wilmington Savings Fund Society to prove that its foreclosure sale against my home is wrongful. That case is on appeal to the District of Columbia Court of Appeals in Case Number 19-CV-1186. . . .
>
> Unfortunately, I cannot afford to post a supersedeas bond to prevent Wilmington Savings Fund Society from evicting me while I pursue my state appeal. It is my intention to provide in my Plan for the payment of the taxes and insurance on my property during the pendency of my appeal as a good faith payment to show that Wilmington Savings Fund Society is not being prejudiced by this Court allowing my bankruptcy case to continue and to keep the automatic stay in place.

Horton refers to the Property as "my Property" but the Property became the property of Savings Fund Society ("Wilmington Savings") upon the completion of the foreclosure sale. The Property is no longer an asset of Horton for which he can use Chapter 13's reorganization tools. Nor does Wilmington Savings have a claim Horton needs to address under a plan. Wilmington Savings' claim against Horton has been discharged by Horton's discharge in the prior bankruptcy case: the debt owed is no longer a debt that can be collected from Horton as a personal liability. In addition, the foreclosure sale ended Wilmington Savings' *in rem* claim against the Property.

Accordingly, there is no foreclosure sale in prospect that Horton needs to have stayed so that he can use a Chapter 13 plan to cure any mortgage arrears over time. Nor is Horton a tenant

4

under a lease of the Property entitled to invoke 11 U.S.C. § 365 regarding assuming an unexpired lease.  In short, Horton has not pointed to any reorganization purpose to be served by the filing of this case and the utilization of the provisions that may be set forth in a Chapter 13 plan.

Filing this bankruptcy case to stay the eviction of Horton served no legitimate bankruptcy purpose.  Horton no longer owns the Property: Wilmington Savings bought the Property at the foreclosure sale, and is entitled to obtain possession of the Property.  Horton has attempted to set aside the foreclosure sale and to bar his being evicted, but the Superior Court has twice rejected Horton's attempts:

> Superior Court Case No. 2019 LTB 013881.  On July 1, 2019, Wilmington Savings filed an action for eviction of Horton from the Property.  On October 18, 2019, the Superior Court entered an order holding that the foreclosure sale was proper, that Wilmington Savings properly served a notice to quit on Horton, and that Wilmington Savings was entitled to a non-redeemable judgment of possession.  On October 28, 2019, Horton filed a notice of appeal, and the appeal is pending as Case No.    19-CV-1004 in the District of Columbia Court of Appeals.

> Superior Court Case No. 19-001473.  On March 8, 2019, Horton filed a civil action, Case No. 19-001473, pursuant to

5

    a complaint seeking to declare the foreclosure sale a wrongful foreclosure and seeking monetary damages.  He later amended his complaint, and on October 24, 2019, the Superior Court entered an order dismissing the amended complaint, and concluding that the foreclosure sale was proper and Horton had not stated a valid claim for monetary damages.  On November 26, 2019, Horton filed a notice of appeal.  The appeal is pending in the Court of Appeals for the District of Columbia as Case No. 19-CV-1186.

The debtor did not need to file this case in order to continue to seek a ruling from the District of Columbia Court of Appeals, contrary to the rulings of the Superior Court, that the foreclosure sale was improper and that he is entitled to monetary damages.  The debtor's bankruptcy case was filed to frustrate Wilmington Savings' efforts to evict him from the Property, and that is an instance of bad faith.

    The debtor argues:

> Here, I am not delaying or frustrating the legitimate efforts of Wilmington Savings Fund Society to enforce its rights because were it not for my state of poverty, I would be able to post a supersedeas bond to stay my eviction during my appeal.  Thus, my bankruptcy stay is no different from a supersedeas bond - both prevent my being evicted pending resolution of my appeal as was done in the *Texaco v. Pennzoil Co.* bankruptcy and the *Price v. Phillip Morris* bankruptcy - both of which involved giant companies taking advantage of the automatic stay of bankruptcy instead of a supersedeas bond while they pursued their appeals.

However, Horton's filing this bankruptcy case to prevent an owner

6

from recovering its Property serves no reorganization purpose. In contrast, when a debtor cannot afford to post a supersedeas bond pending an appeal of a monetary judgment against it, and execution of the monetary judgment would wreak havoc on preserving the value of a debtor's business, filing a bankruptcy case to preserve the value of the debtor's business for the benefit of all creditors is not the same thing.  For example, if the judgment against Texaco in *Texaco v. Pennzoil Co.* caused Texaco to be on the verge of a financial meltdown, then its bankruptcy case filing fell "within the generally recognized rule that where the size of a judgment threatens a debtor's ability to stay in business, filing bankruptcy and obtaining the benefit of the automatic stay in lieu of posting a supersedeas bond does not constitute an act of bad faith."  Lawrence Ponoroff F. Stephen Knippenberg, *The Implied Good Faith Filing Requirement: Sentinel of an Evolving Bankruptcy Policy*, 85 Nw. U. L. Rev. 919, 986 (1991).[1]

This case was filed for the purpose of staying Wilmington Savings from obtaining possession of the Property that it now owns.  In the circumstances, this is bad faith warranting

---

[1] Texaco succeeded in having the bankruptcy court "confirm a reorganization plan providing for full cash payment plus post petition interest for all unsecured creditors other than Pennzoil.  *See In re Texaco Inc.*, 84 Bankr. 893, 895 (Bankr. S.D.N.Y.), *aff'd*, *Transworld Airlines, Inc. v. Texaco Inc.*, 92 Bankr. 38 (S.D.N.Y. 1988)."  *Id.* at 986 n.224.

dismissal of the case.  *See In re Premier Automotive Services, Inc.*, 492 F.3d 274 (4th Cir. 2007) (case filed to prevent eviction of debtor whose lease had expired); *In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.*, 77 B.R. 909, 911 (Bankr. M.D. Fla. 1987) (case filed to delay creditor's eviction action); *In re On the Ocean, Inc.*, No. 16-16204-BKC-RBR, 2016 WL 8539791, at *2 (Bankr. S.D. Fla. June 6, 2016).

For all of these reasons, I find that this case was filed in bad faith and dismissal is warranted on that basis.  If I were to dismiss the case without prejudice, the debtor would be free to file a new case on the eve of any execution of a writ of eviction.  In that circumstance, it is appropriate to dismiss the case with prejudice for 180 days.  An order follows.

[Signed and dated above.]

Copies to: Debtor (by hand-mailing); recipients of e-notification of filings.